UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE #1 & JOHN DOE #2,<br><br>    *Plaintiffs*,<br><br>v.<br><br>ABERCROMBIE & FITCH CO., MICHAEL S. JEFFRIES, MATTHEW SMITH, and JAMES JACOBSON,<br><br>    *Defendants*. | Civ. No.  1:25-cv-1105<br><br>**COMPLAINT** |

  Plaintiffs John Doe #1 and John Doe #2, by and through their attorneys, Eisenberg & Baum, LLP, hereby state their Complaint against Defendants Abercrombie & Fitch Co., Michael S. Jeffries, Matthew Smith, and James Jacobson, and allege as follows based upon personal knowledge and information and belief:

### PRELIMINARY STATEMENT

  1. Throughout their careers, Michael S. Jeffries, Matthew Smith, and James Jacobson have committed heinous and despicable acts of sexual misconduct with the acceptance, authority, and encouragement of Abercrombie & Fitch Co., one of America's best-known clothing retailers.

  2. Plaintiffs John Doe #1 and John Doe #2, two of Defendants' victims, were both aspiring models who were lured with promises of career-making gigs with Abercrombie & Fitch but viciously sexually assaulted by the company's owners and managers instead.

  3. These events were devastating to Plaintiffs and resulted in severe psychological and emotional distress that continue to this day.

## PARTIES

4. Plaintiff John Doe #1 is an individual.

5. Plaintiff John Doe #2 is an individual.

6. Upon information and belief, Defendant Abercrombie & Fitch Co. ("A&F") is a Delaware corporation with a registered address for service at c/o The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801.

7. Upon information and belief, Defendant Michael S. Jeffries is an individual who was at all relevant times the chairman and CEO of AF.

8. Upon information and belief, Defendant Matthew Smith is an individual who was at all relevant times employed by AF and/or Jeffries.

9. Upon information and belief, Defendant James Jacobson is an individual who was at all relevant times employed by AF and/or Jeffries.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction for the federal law claim under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction for the state law claim under 28 U.S.C. § 1367 because that claim is substantially related to the federal law claim.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other things, the acts and omissions giving rise to this Complaint occurred in this District.

## STATEMENT OF FACTS

**A.  John Doe #1**

12. In 2011, John Doe #1 was a model for Wilhelmina Models and attended a casting call at the Setai Hotel in Miami to be a cover model for A&F's bags.

13. When Doe #1 arrived at the hotel with other models (including Doe #2), handlers took their belongings, instructed them to dress only in a pair of white A&F underwear that they provided, and handed them a glass of wine.

14. After a while, Doe #1 was directed to enter a room alone where he met Defendants Michael "Mike" Jeffries and his partner, Matthew "Matt" Smith.

15. The two men acted as if they were auditioning Doe #1 for the A&F gig, but Jeffries and Smith relentlessly pressed Doe #1 for information about his sexuality, expressing their interest in heterosexual males like Doe #1.

16. Doe #1 repeated that he wanted to be the cover model on A&F's bags.

17. Mike Jeffries then walked up to Doe #1, grabbed him by the back of his neck, and forcibly kissed him. He then reached behind Doe #1, into his underwear, and digitally penetrated Doe #1's rectum.

18. Doe #1, who never consented to this assault, pushed Jeffries away and left the casting. Jeffries called out while Doe #1 was leaving: "Cool it boy, you might still get this campaign. I was just checking to see how straight you actually are." Jeffries then sucked the finger he assaulted Doe #1 with.

19. Three weeks later, Doe #1 was contacted by Defendant James "Jim" Jacobson, who stated that Jeffries and A&F enjoyed Doe #1's photos and wanted to call him back for more.

20. Jacobson instructed Doe #1 to meet him at the Marriott hotel in Miami near the airport.

21. When Doe #1 arrived at the hotel, he was directed to a room where Jacobson answered the door in a bathrobe holding a camera in his hand.

22. While suspicious, Doe #1 was not yet deterred because the opportunity would be life changing, and this was being presented as a legitimate A&F modelling campaign.

23. Jacobson directed Doe #1 to put on a pair of white A&F underwear and that he needed some pictures so that Jeffries could make their final decision.

24. After taking a few pictures, Jacobson suddenly reached down and grabbed Doe #1's penis and said, "Let me just blow you and get you real hard so these pictures can come out sexy." Doe #1 said, "No."

25. After the photo session ended, Jacobson then asked Doe #1 his sexuality and stated that Jeffries likes "fucking around with straight boys."

26. Doe #1 asked Jacobson what relevance this had to the A&F campaign, and Jacobson reiterated that Doe #1 needed to make Jeffries and his partner happy in order to secure the gig.

27. A few weeks later, Jacobson informed Doe #1 that A&F would fly him to New York City to take some additional pictures, stating that this could be an opportunity to make money and to finalize the casting for the A&F campaign. A&F picked Doe up at the airport, and gave him an A&F gift card, requiring him to shop for outfits for the photoshoot before putting him up at the Hudson Hotel.

28. The next morning, Doe #1 was picked up and driven to a house in the Hamptons.

29. After a few hours, a handler brought him to a large bedroom where Jeffries and Smith were.

30. Jeffries again asked Doe #1 about his sexuality and if he would have sex with a man in exchange for pay, gifts, or other favors.

31. Doe #1 replied, "No, I'm straight and have a girlfriend." He was then dismissed.

32. Hours later, after the photo shoot ended, Doe #1 was showering and preparing to leave. Jeffries entered the bathroom, revealed a fully erect penis, entered Doe #1's shower, and told him, "I want to see if you're really as straight as you say you are."

33. Jeffries licked Doe #1's face and asked, "How bad do you want this campaign?"

34. Jeffries then dropped to his knees and forcefully grabbed Doe #1's testicles and penis.

35. He grabbed Doe #1 so roughly and with such force that he injured his left testicle, which took weeks to recover.

36. Doe #1 yelled at Jeffries to stop several times, and they ended up grappling in the shower.

37. All the while, Jeffries' penis was fully erect and secreted fluid that got on Doe #1's legs and torso during the struggle.

38. Jeffries finally stopped and said, "Do you want this campaign or not?"

39. Doe #1 answered, "No, not like this."

40. Jeffries said, "Ok, well do you want money? I will give you $6,000 to stay here the rest of the day to have sex with me and my husband, and I will give you the Abercrombie campaign. We can sign the contract before you leave."

41. Doe #1 declined and demanded a ride back to his hotel.

42. He tried to run out of the room, but Jeffries grabbed him by the waist and forcefully penetrated Doe #1's rectum with his penis.

43. Doe #1 pushed Jeffries' face away to make him stop, which he did.

44. Doe #1 ran out of the bathroom, collected his things, got dressed, and began to leave.

45. A handler refused to arrange for Doe #1 to be taken back to his hotel without signing a Non-Disclosure Agreement until Doe #1 threatened to call the police.

46. Due to the above actions, Doe #1 has suffered from severe emotional distress in addition to physical injury.

**B.    John Doe #2**

47. In 2011, Doe #2 was a struggling male model/actor who lived with his girlfriend in South Florida.

48. After connecting with A&F and having an initial photo shoot with Jim Jacobson, Jacobson informed him of a casting call at the Setai Hotel.

49. Upon arriving at the hotel suite, like with Doe #1, Doe #2 was instructed to put on a pair of underwear and given wine to drink.

50. When Doe #2's turn came, he went into a separate room with one other model, and Jeffries and Smith took pictures of them.

51. During this time, Jeffries repeatedly told Doe #2 that he was perfect for the company and that he would be their campaign model. Jeffries also cupped Doe #2's penis and testicles overtop his underwear, rubbing his fingers over them, then said, "Abercrombie models get special treatment."

52. Jacobson later emailed Doe #2 and, just like with Doe #1, informed him that he would be flown to New York City, and Doe #2 was driven from there to the Hamptons for what was purported to be more modeling work.

53. In the Hamptons, Doe #2 was brought to meet Jeffries and Smith again. Jeffries sent Smith away with another model and instructed Doe #2 to take additional photos by the bed.

6

54. Jeffries got closer and closer to Doe #2 and instructed him to lower his pants waistline further and further, eventually instructing him to turn around and pose.

55. Jeffries then approached Doe #2 from behind and pushed him up on the bed. Jeffries took his erect penis out of his pants, forcefully climbed on top of Doe #2, and anally raped him.

56. Doe #2 resisted and shouted "No!", but Jeffries persisted, penetrating Doe #2's anus with his penis without Doe #2's consent and against his repeated objections.

57. Doe #2 had to use physical force to get away from Jeffries, pushing and kicking Jeffries' torso and hips to remove Jeffries' penis from Doe #2 anus, and the forcible removal of Jeffries' penis caused Doe #2 great pain.

58. After Doe #2 screamed out, the other model he had been with came over and said, "The next train is coming. If we leave now, we won't miss it." This model saved Doe #2 by ending the encounter, and the two models escaped.

59. After this event, Doe #2 suffered from severe emotional distress. As a direct result of the above experience, Doe #2 abandoned his modeling career and has not done any modeling since. He and his girlfriend have left Miami and returned to his home state.

**FIRST CAUSE OF ACTION**
(Violation of 18 U.S.C. § 1591 against Jeffries)

60. Plaintiffs repeat, reiterate and re-allege each and every allegation set in detail above as if set forth more fully and at length herein.

61. The Trafficking Victims Protection Act ("TVPA") creates a civil remedy by victims against perpetrators and others who benefitted financially from participation in a sex trafficking venture. *See* 18 U.S.C. § 1595. A TVPA claim must plead that the defendant "knowingly . . . benefits, financially or by receiving anything of value, from participation in a [sex trafficking venture,] while knowing . . . that means of force, threats of force, fraud [or] coercion . . . will be

7

used to cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(2). In addition to traditional sex trafficking ventures such as forced prostitution, the TVPA equally applies in simpler and less sensational situations to "defendants who have lured [people], under false pretenses and with lucrative promises, for sexual purposes." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 516 n.5 (S.D.N.Y. 2018).[1]

62. Jeffries, along with his co-conspirators Smith and Jacobson, frequently traveled to different states for A&F and had Plaintiffs travel to multiple locations for work relating to a purported modelling campaign. Unbeknownst to Plaintiffs, Jeffries actually intended to sexually assault Plaintiffs during these occasions, using the pretext of a lucrative modelling opportunity to force Plaintiffs to perform a commercial sex act.

63. Jeffries knew that he would use promises of modelling opportunities and continued work with Defendants in order to create a pretext for him to meet with Plaintiffs for business-related purposes and used fraud, physical force or coercion to force sexual encounters without Plaintiffs' consent.

64. Jeffries, aided by the other Defendants, arranged meetings with Plaintiffs to lure them into a purported work-related environment that turned into sexual assault.

65. Jeffries knew that the promised modeling campaign and his potential influence on Plaintiffs' careers industry was something of significant and commercial value to Plaintiffs, which he used to perform the sexual assaults described above.

66. Jeffries used his power over Plaintiffs as described above to lure them to him by representing that their meetings were for a legitimate business purpose, but which were actually a

---

[1] Indeed, "Congress noted that 'trafficking in persons is not limited to the sex industry,' and that 'traffickers lure [people] into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models.'" *Noble*, 335 F. Supp. 3d at 514 (citing Pub. L. No. 106-386 § 102, 114 Stat. 1488 (2000)).

pretext for the forced sexual assaults described above. Plaintiffs felt compelled to meet with him because of his power over their careers.

67. Jeffries traveled in interstate and foreign commerce, knowingly recruiting or enticing Plaintiffs, offering them something of value such as lucrative A&F modelling opportunities, knowing that he would use these offers as a means to coerce Plaintiffs to have private "business" meetings with Jeffries and his partner Smith and then use fraud, intimidation, force and/or coercion into forced sexual encounters without Plaintiffs' consent.

68. Thus, Jeffries knowingly affected interstate commerce by recruiting, enticing, transporting, and soliciting Plaintiffs, knowing that he intended to and did perform a commercial sex act on them without Plaintiffs' consent.

69. As a result, Plaintiffs experienced injury in the form of severe emotional pain and suffering, emotional distress and humiliation.

70. For the reasons alleged above, Plaintiffs seek compensatory and punitive damages at an amount to be determined by trial, and an award of attorneys' fees, costs, and disbursements.

**SECOND CAUSE OF ACTION**
(Violation of 18 U.S.C. § 1591 against all other Defendants)

71. Plaintiffs repeat, reiterate, and re-allege each and every allegation set in detail above as if set forth more fully and at length herein.

72. A&F, Smith, and Jacobson each knowingly participated in Jeffries' venture in violation of 18 U.S.C. § 1591 by knowingly benefiting from, facilitating, and receiving value for, the venture in which Jeffries traveled in foreign and interstate commerce, with knowing, or in reckless disregard of the facts, that Jeffries would defraud, force and/or coerce sexual encounters from individuals seeking to do business with A&F.

73. A&F, and Smith, and Jacobson, acting in the scope and course of their employment

9

as Jeffries had directed, coordinated to form a venture that coerced, transported, and harbored Plaintiffs, either with knowledge or in reckless disregard for the fact that Jeffries would use threats, means of force, and coercion to force Plaintiffs into commercial sex acts.

74. These Defendants knew or were in reckless disregard of the fact that it was an established pattern and practice of Defendant Jeffries to travel in interstate and foreign commerce to lure individuals such as Plaintiffs into fraudulent, forced, or coerced pretextual business meetings that, unbeknownst to Plaintiffs, would lead to forced sexual acts.

75. Employees of A&F, including Defendants Smith and Jacobson, knew from observations of Jeffries that he was sexually aggressive. Indeed, Smith and Jacobson were also sexually aggressive, as set forth above.

76. Despite this knowledge, A&F continued to pay for and facilitate Jeffries's interstate and foreign trips while knowing or recklessly disregarding the fact that he would encounter aspiring models seeking to do business with the company and seek to coerce, defraud, and/or force sexual activity in the guise of legitimate modeling work.

77. As a result, Plaintiffs experienced injury in the form of severe emotional pain and suffering, emotional distress and humiliation.

78. For the reasons alleged above, Plaintiffs seek compensatory and punitive damages at an amount to be determined by trial, and an award of attorneys' fees, costs, and disbursements.

### THIRD CAUSE OF ACTION
(Violations of New York's VGMVPL – against all Defendants)

79. Plaintiffs repeat, reiterate, and re-allege each and every allegation set in detail above as if set forth more fully and at length herein.

80. Under New York City's Victims of Gender-Motivated Protection Law ("VGMVPL") survivors of sexual abuse have a 2-year window to file claims over gender-

motivated assaults that occurred at any time in the past. The window opens on March 1, 2023 and closes on March 1, 2025.

81. The VGMVPL provides a civil cause of action to any person "claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a *crime of violence* motivated by gender." Title 8, N.Y.C. Admin. Code § 10-1104. The term "crime of violence" is expressly defined to mean "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction." *Id.* § 10-1103.

82. As set forth above, Jeffries, through A&F and with the knowledge, enablement, and participation of Smith and Jacobson, sexually assaulted Plaintiffs, and this would not have occurred had Plaintiffs been female.

83. Sexual assault is presumed to be committed with "animus" for purposes of the VGMVPL.

84. For the reasons alleged above, Plaintiffs seek compensatory and punitive damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

### FOURTH CAUSE OF ACTION
(Discrimination in employment in violation of the New York State Human Rights Law – against all Defendants)

85. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

86. At all times relevant, Defendants constituted Plaintiffs' prospective employers within the meaning of the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et*

*seq.*, which prohibits sexual harassment in employment, including *quid pro quo* and hostile work environment.

87. Defendants allowed and permitted A&F managers, supervisors, and/or employees, to make unwanted sexual advances to Plaintiffs or engage in other unwanted verbal or physical conduct of a sexual nature and conditioned job benefits, terms and/or conditions, by words or conduct, on Plaintiffs' acceptance of the sexual advances or harassing conduct.

88. Defendants' actions were malicious, wanton, and willful, and taken under circumstances giving rise to an inference of discrimination.

89. A&F is liable for the discriminatory acts of the individual Defendants herein and is liable for aiding and abetting acts of harassment, discrimination, and assault carried out by them.

90. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs suffered adverse employment consequences, in addition to emotional anguish, pain and suffering and loss of dignity damages.

91. For the reasons alleged above, Plaintiffs seek compensatory and punitive damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

**FIFTH CAUSE OF ACTION**
(Common-law sexual assault and battery – against all Defendants)

92. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

93. Jeffries intentionally attempted, without authority or consent, to harm and/or offensively contact Plaintiffs, and this attempt reasonably placed Plaintiffs in fear and apprehension of such harm and/or offensive contact, which conduct proximately caused them injury and damage and were made possible through the other Defendants' actions and inactions.

94. A harmful, offensive, unprivileged, and unpermitted contact with Plaintiffs actually occurred as a result of this conduct.

95. As a result, Plaintiffs have experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages.

96. Defendants' conduct was malicious, wanton, and willful.

97. For the reasons alleged above, Plaintiffs seek compensatory and punitive damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

## SIXTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress – against all Defendants)

98. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

99. Jeffries' conduct and assault and battery of Plaintiffs described above were intentional, shocking, unreasonable, and highly offensive, and were made possible through the other Defendants' intentional actions.

100. Defendants' intentional actions and inactions set forth above caused severe and debilitating emotional distress to Plaintiff.

101. Defendants' conduct was malicious, wanton, and willful, entitling Plaintiff to punitive damages.

102. Accordingly, Plaintiffs seek compensatory and punitive damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

## SEVENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress – against Abercrombie & Fitch Co. in the alternative)

103. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

104. Abercrombie & Fitch Co. owed a duty of care to models under consideration for A&F modelling opportunities, including Plaintiffs.

105. A&F demonstrated negligence by breaching this duty of care at multiple stages, including but not limited to failing to prevent Jeffries from committing the above sexual assault and conduct under the guise of an actual A&F modeling opportunity.

106. A&F's unintentional actions and inactions set forth above negligently caused severe and debilitating emotional distress to Plaintiffs.

107. Accordingly, Plaintiffs seek compensatory and punitive damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court grant the following relief against Defendants:

A. Enter judgment against Defendants and an award of damages, including but not limited to compensatory damages for emotional distress, nominal, punitive, and/or exemplary damages, attorneys' fees, pre- and post-judgment interest in an amount to be determined at trial by a jury; and

B. Any further relief as this Court deems just and proper.

Dated: February 26, 2025                                    Respectfully submitted,

**EISENBERG & BAUM, LLP**

 /s/ *Adriana Alcalde*
Eric Baum
Adriana Alcalde
David John Hommel
Andrew M. Clark
24 Union Square East, Penthouse
New York, NY 10003
(212) 353-8700

ebaum@eandblaw.com
aalcalde@eandblaw.com
dhommel@eandblaw.com
aclark@eandblaw.com

and

Brian Silber (*pending pro hac vice*)
Victim Rights Law Firm
916 South Andrews Avenue
Fort Lauderdale, FL 33316
brian@victimrights.com

Case 2:25-cv-01105-LDH-LGD    Document 1    Filed 02/26/25    Page 15 of 15 PageID #: 15