UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN DOE #1 and JOHN DOE #2

Plaintiffs,

v.

ABERCROMBIE & FITCH CO., MICHAEL S.
JEFFRIES, MATTHEW SMITH, and JAMES
JACOBSON

Defendants.

**MEMORANDUM AND ORDER**

25-cv-01105 (LDH) (AYS)

LaSHANN DeARCY HALL, United States District Judge:

John Doe #1 and John Doe #2 (collectively, "Plaintiffs") bring the instant action against

Defendants Abercrombie & Fitch CO. ("A&F"), Michael S. Jeffries, Matthew Smith, and James

Jacobson (collectively, "Defendants") asserting claims for violations of:  the Trafficking Victims

Protection Reauthorization Act ("TVPRA"); New York's Trafficking Victims Protection and

Justice Act; New York City's Victims of Gender-Motivated Protection Law; and New York

State Human Rights Law.  In addition, Plaintiffs assert claims of:  common law sexual assault

and battery; and intentional infliction of emotional distress, or, in the alternative, negligent

infliction of emotional distress).[1]

---

[1] On June 2, 2025, the Court held a pre-motion conference hearing related to:  (1) Defendants' anticipated motion to stay this action pending the resolution of a criminal action against Defendants Jeffries, Smith, and Jacobson, *USA v. Jeffries et al*, No. 24-cr-00423-NJC (E.D.N.Y. Oct. 17, 2024); and (2) Defendants' anticipated motion to transfer venue of this action to the United States District Court for the Southern District of New York (the "SDNY"). During the June 2, 2025 hearing, the Court stayed this action pending the resolution of *USA v. Jeffries et al*, No. 24-cr-00423-NJC (E.D.N.Y. Oct. 17, 2024).  In addition, the Court set a briefing schedule pertaining to Defendants' anticipated motion to transfer venue to the SDNY.  Presently before the Court is Defendants' motion, pursuant to 28 U.S.C. § 1404(a), to transfer venue to the Southern District of New York ("SDNY").  (Defs.' Mot. Transfer Venue, ECF No. 51.)

**BACKGROUND**

The Court assumes the parties' general familiarity with the facts alleged in the Amended Complaint and recites only those facts relevant to the consideration of Defendants' motion to transfer venue to the SDNY.[2]  In 2011, Plaintiffs attended a casting call audition at the Setai Hotel in Miami to be cover models for Defendant A&F.  (Am. Compl. ¶¶ 12-13; 48, ECF No. 29.)  Defendant Jeffries and Defendant Smith were at the audition.  (*Id.* ¶¶ 12-14.)  Defendant Jeffries was the chairman and CEO of Defendant A&F, while Defendant Smith was employed by Defendant A&F and/or Defendant Jeffries.  (*Id.* ¶¶ 7-8).  During John Doe #1's audition, John Doe #1 was sexually assaulted by Defendant Jeffries while Defendant Smith was present.  (*Id.* ¶¶ 13-17.)  And, during John Doe #2's audition, John Doe #2 was sexually assaulted by Defendant Jeffries while in a room with Defendant Smith and one other model.  (*Id.* ¶¶ 48-51.)  Following both assaults, Defendant Jacobson contacted each Plaintiff for additional modeling work.  (*See* ¶¶ 19; 51-52.)  At all relevant times, Defendant Jacobson was employed by Defendant A&F and/or Defendant Jeffries.  (*Id.* ¶ 9.)

**<u>John Doe #1</u>:**

After John Doe #1's audition at the Setai Hotel, Defendant Jacobson contacted John Doe #1, stating that Defendants Jeffries and A&F wanted to call him back for additional photos.  (*Id.* ¶ 19.)  Defendant Jacobson then instructed John Doe #1 to meet him at the Marriot Hotel in Miami for additional photos.  (*Id.* ¶ 20.)  Thereafter, John Doe #1 met Defendant Jacobson as instructed.  (*Id.* ¶ 21.)  When he arrived at the Marriot Hotel, John Doe #1 was directed to a room where Defendant Jacobson answered the door in a bathrobe with a camera in hand.  (*Id.*)

---

[2] The following facts are taken from the Amended Complaint and accepted as true for the purposes of addressing Defendant's instant motion.

Although John Doe #1 found this greeting suspicious, he was not yet deterred because the meeting was made in connection with what John Doe #1 understood to be a legitimate and life changing modeling campaign with Defendant A&F. (*Id.* ¶ 22.) Defendant Jacobson directed John Doe #1 to put on a pair of Defendant A&F's underwear so that he could present Defendant Jeffries with pictures to assist him in making "their final decision." (*Id.* ¶ 23.) After taking a few pictures, John Doe #1 was sexually assaulted by Defendant Jacobson. (*Id.* ¶ 24.) At some point, Defendant Jacobson told John Doe #1 that Defendant Jeffries "likes 'fucking around with straight boys.'" (*Id.* ¶ 25.) When John Doe #1 asked how this statement was relevant to Defendant A&F's modeling campaign, Defendant Jacobson stated that John Doe #1 "needed to make [Defendant] Jeffries and his partner happy in order to secure the gig." (*Id.* ¶ 26.) John Doe #1 understood Defendant Jeffries' "partner" to be Defendant Smith. (*See id.* ¶ 14.)

A few weeks after John Doe #1 met Defendant Jacobson at the Marriot Hotel in Miami, Defendant Jacobson informed John Doe #1 that Defendant A&F "would fly him to New York City to take some additional pictures, stating that this could be an opportunity to make money and to finalize the casting for the A&F campaign." (*Id.* ¶ 27.) Defendant A&F "picked up John Doe #1 at the airport," gave him an A&F gift card, required him to shop for outfits for the photoshoot, and then arranged for a one-night stay at Hudson Hotel. (*Id.*) After staying at the Hudson Hotel for one night, John Doe #1 was brought to a house in the Hamptons, in Long Island. (*Id.* ¶ 28.) In the Hamptons, Defendant Jeffries sexually assaulted John Doe #1 while making references to money and John Doe #1's potential position in Defendant A&F's modeling campaign. (*Id.* ¶¶ 28-40.)

**John Doe #2**:

After John Doe #2's audition at the Setai Hotel in Miami, Defendant Jacobson informed John Doe #2 that Defendant A&F would fly John Doe #2 to New York City for modeling work. (*Id.* ¶ 52.)  Once in New York, John Doe #2 was driven from there to the Hamptons where he met Defendants Jeffries and Smith.  (*Id.* ¶¶ 52-53.)  During this meeting, Defendant Jeffries "sent [Defendant] Smith away with another model" and proceeded to sexually assault John Doe #2. (*Id.* ¶¶ 53-58.)

## DISCUSSION

A motion for transfer from one federal district court in which venue is proper to another federal district court is governed by 28 U.S.C § 1404(a).  *Levitt v. State of Maryland Deposit Ins. Fund Corp.*, 643 F. Supp. 1485, 1492 (E.D.N.Y. 1986) ("28 U.S.C. § 1404(a) applies to situations in which venue is proper in the transferor court[, and] 28 U.S.C. § 1406(a) controls actions in which venue in the transferor court is improper.")  Section 1404(a) provides, in relevant part:  "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  In addressing motions for transfer under § 1404(a), the Second Circuit has explained that "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."  *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).  Importantly, "the party requesting transfer carries the burden of making out a strong case for transfer."  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (internal quotations and citation omitted).  Indeed, "district courts in [the Second Circuit] have consistently applied the clear and convincing

4

evidence standard in determining whether to exercise discretion to grant a transfer motion." *Id.* (collecting cases).

When deciding a motion for transfer, the Court engages in a two-prong inquiry. *Blechman v. Ideal Health, Inc.*, 668 F. Supp. 2d 399, 403 (E.D.N.Y. 2009). *First*, the Court must determine whether the proposed venue is proper. *Id.* That is, "whether the action sought to be transferred is one that 'might have been brought' in the district court in which the movant seeks to have the case litigated." *Id.* (quoting *Frasca v. Yaw*, 787 F. Supp. 327, 330 (E.D.N.Y. 1992)). *Second*, if the proposed venue is proper, the court considers "whether the transfer will serve the convenience of witnesses and parties and is in the interests of justice"—often referred to as "the balance of convenience." *Id.* (quoting *Kroll v. Lieberman*, 244 F. Supp. 2d 100, 102 (E.D.N.Y. 2003)). Specifically, courts consider the following ten factors: (1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the attendance of witnesses; (6) the weight accorded to the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances.[3] *Blechman v. Ideal Health, Inc.*, 668 F. Supp. 2d 399, 403 (E.D.N.Y. 2009).

Against this backdrop, Defendants argue that this action should be transferred to the SDNY because venue is proper there and the first-filed rule favors transfer. (Defs.' Mem. Supp. Defs.' Mot. Transfer Venue ("Defs.' Mem.") at 7-22, ECF No. 51-1.) Although Defendants

---

[3] Importantly, none of these factors are dispositive. *Blechman v. Ideal Health, Inc.*, 668 F. Supp. 2d 399, 403 (E.D.N.Y. 2009) (citation omitted).

purportedly move for transfer under the first-filed rule, as explained herein, the "first-filed rule" is "a legal doctrine" that does not, in and of itself, relieve a district court of its duties to engage in further analysis of whether transfer is proper. *See New York Marine & Gen. Ins. Co.*, 599 F.3d at 113-14. In response, Plaintiffs argue that, under the Court's first inquiry pursuant to § 1404(a), Defendants have not established by clear and convincing evidence that venue would be proper in the SDNY for any of Plaintiffs' claims. (Pls.' Opp'n Defs.' Mot. Transfer Venue ("Pls.' Opp'n") at 5-7, ECF No. 52.) The Court agrees with Plaintiffs.[4]

In determining whether venue is proper in a particular district, 28 U.S.C. § 1391 is instructive as it "govern[s] the venue of all civil actions brought in district courts of the United States," except as otherwise provided by law. 28 U.S.C. § 1391(a)(1). Under § 1391(b), venue is proper in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," 28 U.S.C. § 1391(b)(1); "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," 28 U.S.C. § 1391(b)(2); or "(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action," 28 U.S.C. § 1391(b)(3).

---

[4] The Court notes that Defendants argue they are not bound by the clear and convincing evidence standard. (*See* Defs.' Reply Mem. L. Supp. Mot. Dismiss ("Defs.' Reply") at 6-7, ECF No. 53.) This is because, as Defendants argue, their burden under § 1404(a) is somehow relaxed by virtue of them arguing the first-filed rule is applicable to this case. (*Id.*) Not so. Defendants do not provide any authority in support of this contention, and the Court is unaware of any. Moreover, the Second Circuit, as well as courts in this district, have underscored that the clear and convincing evidence standard applies to all motions for transfer under § 1404(a). *New York Marine & Gen. Ins. Co.*, 599 F.3d at 113-14 (affirming that district courts in the Circuit "have consistently applied the clear and convincing evidence standard" to a motion for transfer pursuant to Section 1404(a) (collecting cases)); *see, e.g., Nat'l Experiential, LLC v. Nike, Inc.*, No. 120CV3197ENVSIL, 2021 WL 9678642, at *3 (E.D.N.Y. July 31, 2021) ("On a motion under § 1404, the moving party 'bears the burden of establishing the propriety of transfer by clear and convincing evidence.'" (citation omitted)).

Here, Defendants argue that venue would be proper in the SDNY, under § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the SDNY. (Defs.' Mem. at 12-14, 16-19.) As Defendants argument goes, this is because Plaintiffs' travel related allegations are central to the two TVPRA claims. And, according to the Amended Complaint, John Doe #1 "was transported to Manhattan and 'put [] up at the Hudson Hotel.'" (*Id.* at 16-17.) As such, venue would be proper for the TVPRA claims in the SDNY, where the Hudson Hotel is situated. (*Id.*) And, according to Defendants, a finding that venue is proper in the SDNY for Plaintiff's two TVPRA claims would, in turn, "spur a court to exercise its discretion" under the pendent venue doctrine to adjudicate Plaintiffs' non-TVPRA claims— the six other claims brought by Plaintiffs. (Defs.' Mem. at 17-19.) Defendants' argument is fundamentally misguided for two reasons.

As for the first reason, to determine where venue is proper under § 1391(b)(2), courts engage in a two-step inquiry. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005); *see also Lawson v. Rubin, No. 17-CV-6404 (BMC)*, 2018 WL 2012869, at *8 (E.D.N.Y. Apr. 29, 2018) (acknowledging same two-step inquiry to determine whether venue is proper under § 1391(b)(2)). At the first step, a court identifies "the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d at 432. In the instant case, it is plain from the Amended Complaint that the nature of Plaintiffs' claims and the acts that gave rise to them are grounded in allegations of sexual assault by, or with the aid of, each Defendant. (*See* Am. Compl. ¶¶ 61-115.) Indeed, each cause of action asserted in the Amended Complaint is predicated on allegations of sexual assault, coerced sexual acts, or commercial sex acts. (*See* Am. Compl. ¶¶ 63-69, 73-77, 84, 90-91, 95, 101-02, 107, 113.)

At the second step, the court determines "whether a substantial part of those acts or omissions" occurred in the district in question. *Daniel*, 428 F.3d at 432-33. Importantly, "'[s]ubstantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id.* The Second Circuit has cautioned that a district court commits error when it treats "the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). Rather, Courts are "required to construe the venue statute strictly[,]" meaning, "for venue to be proper, *significant* events or omissions *material* to plaintiff's claim must have occurred in the district in question." *Id.* (emphasis in original). Again, the nature of Plaintiffs' claims sound in sexual misconduct. (*See* Am. Compl. ¶¶ 63-69, 73-77, 84, 90-91, 95, 101-02, 107, 113.) And, the districts in which Plaintiff alleges Defendants engaged in sexual misconduct with respect to Plaintiffs are limited to the Southern District of Florida and the Eastern District of New York. (*See id.* ¶¶ 12-18, 20-25, 27-44, 48-51, 53-57.) As such, Plaintiffs' allegation that John Doe #1 was brought to a hotel in the SDNY, (*id.* ¶ 27), alone, is not material to Plaintiffs' claims because it bears no significance on the nature of Plaintiff's claims—sexual misconduct. *See Ungar v. JetBlue Airways Corp.*, No. 24-CV-1494 (RA), 2025 WL 2711194, at *5 (S.D.N.Y. Sept. 23, 2025) (holding alleged conduct did not make venue proper in the SDNY because "the conduct at the core of [p]laintiffs' allegations . . . occurred outside the [SDNY]"); *Jones v. Fox Rothschild LLP*, No. 19 CIV. 11573 (AKH), 2020 WL 2521328, at *2 (S.D.N.Y. May 18, 2020) ("In a case that includes serious allegations of sexual harassment (in New Jersey), attempted rape (in New Jersey) . . . , and in which the [c]omplaint is permeated by references to persons and

8

conduct in New Jersey, that [the defendant] may have sent 'some' improper text messages from New York is far from enough to constitute a substantial part of these events."); *Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 Civ. 8677, 2018 WL 3407702, at *16 (S.D.N.Y. Feb. 7, 2018) ("Although some of the events giving rise to claims . . . occurred in New York, the Court finds that they substantial[ly] took place [elsewhere].") (quotation marks omitted).

Next, even assuming that Defendants established that venue is proper in the SDNY for the TVPRA claims, their arguments do not support that venue is proper in the SDNY for the remaining claims. (*See* Defs.' Mem. at 19.) Defendants argue that, if the SDNY is a proper venue for the TVPRA claims, then, "under the pendent venue doctrine," it is also proper for the non-TVPRA. (*Id.*) But, this argument ignores the well-known principle that "pendent venue is an exception to the rule that venue must be established for each cause of action asserted in [a] complaint." *Lawson*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *7. That is, Defendants' argument does violence to the general rule that "[t]he venue analysis is performed claim by claim." *Goolden v. Wardak*, No. 19-CV-6257 (JPO), 2020 WL 4271695, at *4 (S.D.N.Y. July 23, 2020). Further, Defendants failed to provide any authority in support of its suggestion that the possibility of another court exercising pendent venue is a proper consideration for this Court when deciding whether venue is proper in a particular district under the first prong of § 1404(a)'s analysis. (*See* Defs.' Mem.) Nor do Defendants address how this Court is to anticipate another court's use of its discretion under the doctrine of pendent venue. (*See* Defs.' Mem.) *See Lawson*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *7 ("In deciding whether to exercise its discretion to hear a claim based on pendent venue, a court must consider factors such as judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants." (internal quotations and citation omitted).) Given these gaps in

Defendants' argument, it cannot be said that Defendants have made "a strong case for transfer," as required. *See New York Marine & Gen. Ins. Co.*, 599 F.3d at 114. The mere possibility that the SDNY may, in its discretion, decline to exercise pendent venue over three-fourths of Plaintiffs' claims properly brought in the Eastern District of New York counsels against granting Defendants' motion. Indeed, should a court in the SDNY decline to exercise pendent venue over the non-TVPRA claims, Plaintiffs would be forced to litigate this case piecemeal, which is contrary to § 1404(a)'s purpose. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (explaining the purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense" (internal quotations and citation omitted)); *see also Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *9 (S.D.N.Y. Sept. 26, 2019) (severing and transferring certain assault and harassment claims because "[e]ven though some of [the plaintiff's] allegations" that occurred in the SDNY "tangentially relate to incidents that occurred [in the Northern District of New York] . . . this d[id] not change the fact that the Northern District of New York [was] the locus of operative facts relating to the alleged sexual assault" (alterations in original accepted)).

In an effort to persuade the Court otherwise, Defendants argue the applicability of the first-filed rule warrants the transfer of this action to the SDNY. (Defs.' Mem. at 7-12.) The first-filed rule is a "well-settled legal doctrine, instructing that 'where there are two [or more] competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.'" *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 243 (E.D.N.Y. 2012) (quoting *First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)). Importantly, however, the first-filed rule does not supersede the twofold inquiry required under 28 U.S.C. § 1404(a), but it

is instead considered "as one among several factors in the overall calculus of efficiency and the interests of justice." *Am. Steamship Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F.Supp.2d 474, 481 (S.D.N.Y. 2007), *aff'd sub nom.*, *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010). In other words, the first-filed rule is only considered at the second prong of the Court's analysis under § 1404(a). *Id.* And, because Defendants have failed to establish by clear and convincing evidence that venue is proper in the district they seek to transfer this action, it need not be considered at all.[5]

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this action to the United States District Court for the Southern District of New York is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
     March 31, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge

---

[5] The Court points out that in Defendants' motion for a pre-motion conference in anticipation of Defendants' motion to stay this action, they argued that the criminal action against Defendants Jeffries, Smith and Jacobson—which is currently pending in this district—"'arises out of the same occurrence' in which Plaintiffs claim they are victims." (Ltr. Mot. at 2, ECF No. 41.) The only location referenced with any specificity in the Indictment in that criminal action is the Eastern District of New York. (*See* Decl. Flemming, Ex. E.) Incredibly, however, Defendants now argue that venue is proper in the SDNY. (Defs.' Mem. at 14-19.) Defendants cannot have it both ways.

11